IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

\_\_\_\_ FILED \_\_\_\_ ENTERED
\_\_\_\_ LODGED \_\_\_\_ RECEIVED

NOV 3 0 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY \_\_\_\_ DEPUTY

**CHRISTOPHER S. FRANCIS,**

    **Plaintiff,**

v.

**SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES,**

    **Defendant.**

Case No.: GJH-15-1255

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This is a 42 U.S.C. § 1983 Complaint brought by Plaintiff Christopher S. Francis against the Secretary of the Department of Public Safety and Correctional Services ("DPSCS") arising from Francis's intrastate transfer to a Western Maryland prison. This Memorandum Opinion and accompanying Order address Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. *See* ECF No. 10. A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Defendant's Motion, treated as a motion for summary judgment, is GRANTED.

### I. BACKGROUND

Francis, who is confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland, complains that the administrative chaplain at the Roxbury Correctional Institution in Hagerstown, Maryland ("RCI-H") had him moved to a higher security prison, the Western Correctional Institution, that was a distance from his family and "home plan" address, in

retaliation for exercising his First Amendment rights in filing administrative inmate request forms and verbally questioning the chaplain's failure to honor "commitments" to the music program at RCI-H. He further claims that this caused him to lose his job as a Plant Maintenance Technician with Maryland Correctional Enterprises ("MCE") and the corresponding income and diminution credits. Francis claims that the move occurred in spite of his excellent work history and very good institutional record. ECF No. 1. Francis's Complaint seeks punitive and compensatory damages, as well as "restorative relief" in the way of transfer to a Jessup, Maryland correctional facility, back pay, and restoration of his job and lost diminution credits.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). But this Court "need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

2

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### B. Summary Judgment

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citations omitted); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that no genuine dispute exists with regard to material facts. *See Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Notably, the moving party can demonstrate that there is no genuine issue of material fact by establishing that "there is an absence of evidence in support of the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party seeking summary judgment

3

demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment. *See id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *See* Fed. R. Civ. P. 56(c)(4).

Where, as here, defendant's motion relies on materials outside the scope of the pleadings, the dispositive motions shall be converted into a motion for summary judgment. *See McBurney v. Cuccinelli*, 616 F.3d 393, 409 n.2 (4th Cir. 2010). For reasons to follow, the Court-construed motion for summary judgment shall be granted.

### III. ANALYSIS

Plaintiff's Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S.

137, 144 n.3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris*, 550 U.S. at 378; *Erickson*, 551 U.S. at 94, and liberally construes Francis's pleadings in light of the fact that he is self-represented, *see Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Defendants contend that Administrative Chaplain Keith Kitchen spoke to Francis about Francis's request to become the inmate facilitator of the band and music activities in the RCI-H music program. The request was denied. Kitchen states that he had no involvement in the decision to transfer Francis. ECF No. 10-3. RCI-H Case Management Manager, Mark Myers, maintains that an inmate has a security status review at least once every twelve months and on August 13, 2013, Francis had that review and it was recommended and approved in September 2013 that he be placed on "Any Medium Transfer List." ECF No. 10-5. A former Case Management Manager at RCI-H, Frances Geist, states that RCI-H has a Special Needs Unit ("SNU") as part of its programming. ECF No. 10-6. Geist states that when she receives a request for inmates from other institutions to be housed at RCI-H's SNU, she needs to transfer an equal number of inmates from RCI-H to the requesting institution. *Id.* According to Geist, she responded to a request to accept the transfer of two inmates from WCI to RCI-H SNU's program

5

on or around January 24, 2014. *Id.* As Francis met the criteria for transfer based upon his security instruments, his name was submitted for transfer to WCI. *Id.* Geist affirms that this was a "routine" transfer and neither Chaplain Kitchen nor the Secretary of the DPSCS had any involvement in the movement. *Id.*

In Opposition, Francis seeks recusal of Defendant's counsel. ECF No. 12. He asks that counsel be appointed to represent him. *Id.* Francis seemingly maintains that Kitchen has "misremembered" the substance and timing of the encounter he had with him. *Id.* He further argues that the timing of his transfer, soon after his filing of a "staff complaint," represents a suspicious chronology and the rationale for his transfer as set out by Ms. Geist is merely a convenient excuse to "swap" him to a higher security facility. *Id.* Francis opines that there were more qualified candidates for transfer to WCI. He further contends that the conditions at WCI are more strict and oppressive than those at RCI-H. *Id.* The basis of Francis's claim is that he was transferred out of RCI-H to WCI in retaliation for his administrative complaints against Administrative Chaplain Kitchen. His claim fails.

First, Francis has failed to set out a claim against the named Defendant, the Secretary for the DPSCS, alleging how he personally participated in violating his rights under the law.[1] *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). This liability, however, is not

---

[1] Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal*, 118 F.3d 1416, 1423 (10th Cir. 1997). Further, absent subjective knowledge, a prison official is not liable. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see*

6

premised on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting *Slakan*, 737 F.2d at 372–73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " *Id.* at 798 (quoting *Slakan*, 737 F.2d at 376).

To establish supervisory liability against the Secretary under § 1983, Francis must show: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"[2]; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799. Francis has not made or supported any such allegations.

Moreover, Francis's transfer to another prison facility, while possibly proving a travel hardship for family members who live at a distance, does not implicate a liberty interest. Generally, prisoners do not have a constitutional right to demand to be housed in one prison setting verses another. "[G]iven a valid conviction, the criminal defendant has been

---

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Shaw*, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.*

constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), the focus on mandatory language in prison regulations was rejected. A liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations. *Id.* at 484. Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id.* Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit held that a liberty interest is not implicated when inmates are placed on administrative segregation, because when compared with these conditions they would expect to experience as an ordinary incident of prison life, such placement does not constitute an atypical and significant hardship. *See Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).

In *Beverati*, the Fourth Circuit, in affirming the decision of this Court, held that Beverati's placement in segregation did not comparatively constitute the type of hardship necessary to give rise to a liberty interest in avoiding such placement. *See Beverati*, 120 F.3d at 503. Likewise, there is nothing in the record or pleadings here which shows that the nature of transfer to WCI comprised the atypical hardship contemplated by *Sandin* or *Beverati*. Thus, Francis's reclassification to that facility does not implicate a liberty interest.

In addition, following the reasoning of the Supreme Court in *Sandin*, it appears that an inmate has no liberty interest in being assigned to a specific job.[3] *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). Francis's transfer to WCI is not an atypical event in the ordinary day-to-day incidents of prison life and cannot be said to have imposed a significant hardship on him. Simply put, Francis does not have a general due process right to obtain a particular job.[4]

## IV. CONCLUSION

Plaintiff's claims against Defendant Secretary are legally unsupported. Accordingly, Defendant's Motion for Summary Judgment will be GRANTED. A separate Order follows.

Dated: November 30, 2015

GEORGE J. HAZEL
United States District Judge

---

[3] Prior to *Sandin*, the Fourth Circuit held that inmates did not have a constitutionally protected right to an institutional job or to remain in a particular job once assigned. *See Altizer v. Paderick*, 569 F.2d 812, 815 (4th Cir. 1978); *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977); *see also Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992).

[4] Likewise, Francis's claim that he was transferred in retaliation for his questions and inmate request forms regarding Chaplain Kitchen's handling of the RCI-H music program is not actionable. The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision. . . ." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Francis has no constitutional right in making such inquiries or administrative complaints. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to [prison] grievance procedures or access to any such procedure voluntarily established by a state.") (citations omitted). Further, Defendant has shown that Francis's transfer occurred in a routine manner and was put into motion prior to his conduct.